F I L E D
Clerk
District Court

FEB 18 2026

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

ZAJI OBATALA ZAJRADHARA,

       Plaintiff,

   v.

HOWARD LUTNICK, in his official
capacity as Secretary of Commerce,
SCOTT BESSENT, in his official capacity
as Secretary of the Treasury,
BROOKE ROLLINS, in her official
capacity as Secretary of Agriculture,
KELLEY LOEFFLER, in her official
capacity as Administrator of the Small
Business Administration,
LINDA E. MCMAHON, in her official
capacity as Secretary of Education, and
JOHN DOES 1-3, in their official or
individual capacities as employees or
agents of the Northern Mariana College or
relevant federal agencies,

       Defendants.

Case No. 1:25-cv-00009

**SCREENING ORDER
DISMISSING COMPLAINT
WITH LEAVE TO AMEND**

    Before the Court are the following two filings, both filed by *pro se* Plaintiff Zaji Obatala Zajradhara on August 29, 2025:  (1) Application to Proceed in District Court Without Prepaying Fees or Costs (ECF No. 1); and (2) Complaint for Damages, Declaratory Judgment, and Injunctive Relief Under Bivens, the Administrative Procedure Act (APA), and Bill of Attainder Prohibitions (ECF No. 2).  As a preliminary matter, the Court GRANTS Plaintiff's Application.  For the reasons

set forth below, the Court DISMISSES the entirety of Plaintiff's Complaint without prejudice and grants Plaintiff leave to amend his Complaint in accordance with the strictures of this order.

## I.    LEGAL STANDARD

As Plaintiff is proceeding without prepayment of costs or fees, the Court is "require[d]" to screen Plaintiff's Amended Complaint, *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000), and ascertain whether it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief," 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  As to failure to state a claim, a complaint survives dismissal "only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'"  *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting 28 U.S.C. § 1915(e)(2)(B)(ii)'s "failure to state a claim" language "parallels the language of Federal Rule of Civil Procedure 12(b)(6)" and applying standard of review for Fed. R. Civ. P. 12(b)(6) dismissals to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii)).  A claim is "plausible on its face" where there is sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[D]etailed factual allegations" are not required; however, a plaintiff must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (rejecting "formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" (internal quotation marks and brackets omitted)).

Plaintiff is proceeding *pro se*; as such, his Amended Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Furthermore, as Plaintiff raises a

civil rights claim, the Court has an obligation "to construe the pleadings liberally and to afford [Plaintiff] the benefit of any doubt." *Hebbe*, 927 F.3d at 342 (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). The Court, however, will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations," *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003), and "may not supply essential elements of the claim that were not initially pled," *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to [survive dismissal]." *Id.*

## II.    BACKGROUND

In his sprawling, thirty-page, single-spaced Complaint,[1] Plaintiff names as defendants U.S. Secretary of Commerce Howard Lutnick, U.S. Secretary of the Treasury Scott Bessent, U.S. Secretary of Agriculture Brooke Rollins, U.S. Small Business Administration (SBA) Administrator Kelly Loeffler, U.S. Secretary of Education Linda E. McMahon, and "unidentified employees/agents of [Northern Marianas College (NMC)] or federal agencies involved in the discriminatory acts" against him, with all identified federal officials sued in their official capacity. (Compl. 5-6, ECF No. 2.) In brief, Plaintiff alleges the following.

(1) In 2018, the House of Representatives of the Twenty-First Northern Marianas Commonwealth Legislature "declar[ed]" Plaintiff *persona non grata* through House Resolution 21-005. (*Id.* at 2, 7.)

---

[1] Plaintiff references exhibits throughout his Complaint but did not file the exhibits. Plaintiff cites his lack of financial means and pendency of his request to proceed *in forma pauperis* as grounds for not filing his exhibits with the Complaint. (*See* Compl. 29 ("Will add as addendum upon Acceptance-, due to Impoverishment / Incorporated").) The Court, however, does not accept Plaintiff's explanation because exhibits filed simultaneously with a complaint and an application to proceed *in forma pauperis* are processed and docketed by the Clerk's Office even while a determination concerning Plaintiff's *in forma pauperis* status remains pending.

(2) The House of Representatives took action through House Resolution 21-005 in response to Plaintiff's anti-corruption advocacy and whistleblowing activities, including Plaintiff's past labor-claims litigation and emails concerning NMC's alleged misuse of federal funds. (*Id.* at 2-4, 7-8, 18-23.)

(3) Plaintiff was subsequently denied access to federally funded programs and events by Commonwealth of the Northern Mariana Islands ("the Commonwealth") and NMC officials or employees.  (*Id.* at 7.)

(4) Plaintiff filed complaints with the various federal agencies that fund the programs and events, asserting that the Commonwealth and NMC discriminated or retaliated against him in violation of federal law, regulations, policies, mandates, and memoranda of understanding governing the use of federal funds.  (*Id.* at 2-3, 7-9.)

(5) All named Defendants did not respond to Plaintiff's complaints or otherwise take action to enforce federal anti-discrimination, anti-retaliation, and whistleblower protection provisions and reverse or correct the adverse decisions of the Commonwealth and NMC. (*Id.* at 6-9, 11-15, 17, 24.)

Plaintiff sets forth five counts:

- "Count I:  Bivens Claim – Fifth Amendment Due Process and Equal Protection Violations," in which he alleges that Defendants' inaction on Plaintiff's complaints denied him "notice and an opportunity to be heard" "as they denied fair hearings or investigations" and permitted the Commonwealth and NMC to continue to discriminate against him on the basis of race, national origin, and whistleblower status (*id.* at 10-12);

- "Count II:  Bivens Claim – First Amendment Retaliation," in which he alleges that "federal officials punished Plaintiff for exercising protected speech" (*id.* at 12-13);

- "Count III:  [Administrative Procedure Act (APA)] Violation – Arbitrary and Capricious Agency Action," in which he alleges that Defendants' inaction on the issues identified in Plaintiff's complaints to the agencies is arbitrary, capricious, and contrary to law, warranting "judicial review and set-aside" pursuant to the APA (*id.* at 13-17);

- "Count IV:  Bill of Attainder Violation," in which he contends that House Resolution 21-005 is a bill of attainder that is prohibited by Article I, Section 9, Clause 3 of the U.S. Constitution (*id.* at 18-23); and

- "Count V:  Declaratory Judgment," in which he seeks a judgment declaring that "Defendants' action[s], including their systemic failure to enforce anti-discrimination, anti-retaliation, and whistleblower protections in federally funded programs[,]" violate federal laws, regulations, guidance, mandates, memoranda, and executive orders (*id.* at 24-28).

As to his requested relief,

> Plaintiff seeks damages in the amount of $100,000,000.00 for emotional distress, economic harm, and punitive purposes; declaratory judgment that Defendants' actions are unconstitutional and unlawful; injunctive relief to compel enforcement of anti-discrimination mandates and restore access to programs; and costs/attorneys' fees under the Equal Access to Justice Act (28 U.S.C. § 2412).

(Compl. 3; *see also id.* at 29 (also requesting a bench trial and "[o]ther relief as just").)

### III.    DISCUSSION

The Court first addresses Plaintiff's claims as asserted against the named federal-officer Defendants.  The Court then assesses the claims as asserted against the unnamed Doe Defendants.

//

//

//

//

**A.  Named Federal-Officer Defendants**

**1.  Plaintiff's *Bivens* Claims (Counts I and II)**

Plaintiff's first two counts allege claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and its progeny, namely, that Defendants—as federal officers—violated Plaintiff's constitutional rights such that Plaintiff is entitled to damages. *See, e.g.*, *Egbert v. Boule*, 596 U.S. 482, 490-93 (2022) (discussing evolution of availability of damages pursuant *Bivens* and progeny).  Plaintiff's *Bivens* claims against all Defendants in their official capacity must be dismissed.

First, the Ninth Circuit has explained:

> *Bivens* created a remedy for violations of constitutional rights committed by federal officials acting in their individual capacities. In a paradigmatic *Bivens* action, a plaintiff seeks to impose personal liability upon a federal official based on alleged constitutional infringements he or she committed against the plaintiff.  "[A] Bivens action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity."  This is because a Bivens suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity.

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (citations omitted) (quoting *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987)); *see also FBI v. Super. Ct.*, 507 F. Supp. 2d 1082, 1094 (N.D. Cal. 2007) ("The general rule is that a suit against the United States is defined broadly as any action seeking a judgment that would: 1) 'expend itself on the public treasury or domain;' 2) 'interfere with the public administration;' or 3) 'restrain the Government from acting' or 'compel it to act.'  An action against a government employee constitutes a suit against the United States assuming it would have one of these effects." (citations omitted) (quoting *Washington v. Udall*, 417 F.2d 1310, 1314-15 (9th Cir. 1969),

1    *superseded by statute on other grounds as recognized in Mashiri v. Dep't of Educ.*, 724 F.3d 1028,

2    1032 (9th Cir. 2013))); *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994).

3          In this case, Plaintiff's *Bivens* claims are against named federal officials in their official

4    capacity overseeing agencies that fund and partner with NMC and Commonwealth entities who

5    allegedly punished Plaintiff for exercising protected free speech.  However, the Court "lack[s]

6    subject-matter jurisdiction over [Plaintiff's *Bivens* claims] because the United States has not

7    consented to its officials being sued in their official capacities."  *Consejo*, 482 F.3d at 1173.

8    Accordingly, dismissal without prejudice of Counts I and II as against the named federal-officer

9    Defendants is necessary.  Fed. R. Civ. P. 12(b)(1), (h)(3); *Missouri ex rel. Koster v. Harris*, 847

10   F.3d 646, 656 (9th Cir. 2017); *see also* 28 U.S.C. § 1915(e)(2)(B)(iii) (requiring dismissal where

11   *in forma pauperis* complaint "seeks monetary relief against a defendant who is immune from such

12   relief").

13         Second, even if Plaintiff had properly brought his *Bivens* claims against the federal-officer

14   Defendants in their individual capacities,[2] Plaintiff fails to state a claim against any of the federal-

15   officer Defendants.  The Supreme Court has explained:

16                [I]t must be noted that a *Bivens* action is not "a proper vehicle for
                  altering an entity's policy."  [*Corr. Servs. Corp. v. Malesko*, 534 U.S.
17                61, 74 (2001).]  Furthermore, a *Bivens* claim is brought against the
                  individual official for his or her own acts, not the acts of others.
18                "[T]he purpose of *Bivens* is to deter *the officer*."  *Meyer*, [510 U.S.
                  at 485.]  *Bivens* is not designed to hold officers responsible for acts
19                of their subordinates.  *See Iqbal*, [556 U.S. at 676] ("Government
                  officials may not be held liable for the unconstitutional conduct of
20                their subordinates under a theory of *respondeat superior*.").

21

22   _____

23   [2] Ordinarily, the lack of subject-matter jurisdiction over Plaintiff's first two counts would preclude the Court
     from addressing the substance of the two counts.  However, the Court sets forth alternative bases for

24   dismissal here in view of the reasoning herein being controlling as to the Doe Defendants (*see infra* Part II-
     B), the opportunity to file an amended complaint (*see infra* Part II-C), and Plaintiff's *pro se* status.

1   *Ziglar v. Abbasi*, 582 U.S. 120, 140-41 (2017).  Here, Plaintiff asserts that the federal-officer

2   Defendants did not take action on his complaints and otherwise took unconstitutional actions

3   against him.  But Plaintiff's allegations do not even begin to show that any of the federal-officer

4   Defendants were personally aware of Plaintiff, his activities and complaints, or the specific

5   conduct of the Commonwealth and NMC entities and affiliates that allegedly wronged him.

6   Instead, Plaintiff's allegations indicate the only contact he had with any federal entity was through

7   his complaints, as submitted to the inspectors general of the federal agencies that fund the

8   Commonwealth and NMC programs and events that he cannot access or attend.  As such, Plaintiff

9   has put forward mere "[v]ague and conclusory allegations of official participation in civil rights

10  violations" that are insufficient to state a claim against any federal-officer Defendant in their

11  individual capacity.  *Ivey*, 673 F.2d at 268; *Iqbal*, 556 U.S. at 678.

12          Third, *Bivens* does not provide a remedy for Defendants' alleged violations of Plaintiff's

13  rights under the Fifth Amendment's Due Process Clause.  Plaintiff bases the Due Process Clause

14  portion of his Fifth Amendment *Bivens* claim on Defendants' inaction on Plaintiff's complaints,

15  including Defendants' failure to provide any notice and opportunity to be heard on his complaints.

16  The Supreme Court has held that *Bivens* does not extend to circumstances where "there are sound

17  reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of

18  the system for enforcing the law and correcting a wrong" or where "there is an alternative remedial

19  structure present," *i.e.*, that "Congress has created 'any alternative, existing process for protecting

20  the injured party's interest[.]'"  *Ziglar*, 582 U.S. at 137 (original brackets omitted) (quoting *Wilkie*

21  *v. Robbins*, 551 U.S. 537, 550 (2007)).  Here, a claim based on a federal agency's action or inaction,

22  as with a claim that challenges the arbitrariness, capriciousness, or unlawfulness of an agency

23  determination, falls within the broad scope of the APA as the "comprehensive remedial scheme,"

24

1   enacted by Congress, for legal wrongs arising from unfavorable agency actions. *W. Radio Servs.*

2   *Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1122 (9th Cir. 2009); *see also* 5 U.S.C. § 706(1), (2)(A)

3   (scope of judicial review of agency actions includes, *inter alia*, "compel[ling] agency action

4   unlawfully withheld or unreasonably delayed" and "hold[ing] unlawful and set[ting] aside agency

5   action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in

6   accordance with law").  Even if an action under the APA would not provide the same exact scope

7   or types of relief as *Bivens*, "[s]o long as the plaintiff has an avenue for some redress, bedrock

8   principles of separation of powers forecloses judicial imposition of a new substantive liability."

9   *W. Radio Servs.*, 578 F.3d at 1120 (original brackets omitted) (quoting *Malesko*, 534 U.S. at 69).

10  Therefore, the Due Process Clause portion of Count I is not a cognizable claim for relief.

11         Fourth, Plaintiff fails to plead sufficient facts to show that Defendants discriminated against

12  him in violation of the Fifth Amendment's guarantee of equal protection.[3]  "To state a violation of

13  equal protection, [Plaintiff] must demonstrate both differential treatment and discriminatory

14  motive." *Cole v. Oravec*, 465 F. App'x 687, 689 (9th Cir. 2012).  Here, Plaintiff does not set forth

15  any allegations showing that he was treated differently than other similarly situated individuals

16  who differ only in the protected characteristics asserted by Plaintiff.  Nor does Plaintiff plead

17  sufficient facts to permit the Court to draw the plausible inference that Defendants had an

18  impermissible discriminatory motive based upon the existence of House Resolution 21-005 or

19  Plaintiff's protected activities or characteristics.  Instead, Plaintiff conflates the named and

20

21  _____

[3] Though the Fifth Amendment does not have language guaranteeing "the equal protection of the laws," *compare* U.S. Const. amend. V *with* U.S. Const. amend. XIV, § 1, "[t]he Supreme Court has determined that 'the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups,'" such that the analysis of equal protection claims under the Fourteenth Amendment is identical and applicable to equal protection claims brought under the Fifth Amendment.  *United States v. Carrillo-Lopez*, 68 F.4th 1133, 1139 (9th Cir. 2023) (quoting *Washington v. Davis*, 426 U.S. 229, 239 (1976)).

unnamed Defendants with the acts of non-parties (*e.g.*, the House of Representatives, NMC, Commonwealth agencies) and effectively seeks the Court to draw, through a series of "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678, the inference that Defendants were aware of Plaintiff's activities, characteristics, and alleged *persona non grata* status and acted (or chose not to act) to punish Plaintiff for the same. Such pleading fails to state a claim. *Id.*; *Ileto*, 349 F.3d at 1200; *Ivey*, 673 F.2d at 268. As such, the equal protection portion of Count I would be subject to dismissal for failure to state a claim, as well.

Fifth, as to Plaintiff's *Bivens* claim based on retaliation in violation of the First Amendment, the Supreme Court has expressly held—and Plaintiff's Complaint recognizes—that "there is no *Bivens* action for First Amendment retaliation." *Egbert*, 596 U.S. at 499. (*See* Compl. 12 (quoting *Egbert*).) Therefore, Count II in its entirety, as with the Due Process Clause portion of Count I, is not a cognizable claim.

## 2. Plaintiff's APA Claim (Count III)

In Count III, Plaintiff asserts a claim under the APA based on Defendants' arbitrary, capricious, and unlawful failure to enforce various provisions of federal law and related legal guidance applicable to federally funded programs. Plaintiff's allegations fail to state a claim.

First, judicial review of agency actions under the APA is limited to agency actions that are "final," 5 U.S.C. § 704, namely, actions (1) which "mark the 'consummation' of the agency's decisionmaking process" and (2) "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (first quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948), then quoting *Port of Boston Mar. Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). Here, Plaintiff's factual allegations merely show that he filed complaints with federal

1    agencies after being denied or excluded from NMC and Commonwealth programs and events but

2    do not show that the federal agencies[4] made any final determination as to any of his complaints.[5]

3    Plaintiff's implied presumption that the lack of any response as to any of his complaints constitutes

4    final agency action is a conclusory legal assertion that the Court cannot accept.  *See Al Otro Lado,*

5    *Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1207 (S.D. Cal. 2019) ("A plaintiff may not simply attach

6    a policy label to disparate agency practices of conduct."); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S.

7    871, 890 (1990) (rejecting challenge to entirety of federal agency's "continuing (and thus

8    constantly changing) operations" in carrying out statutory mandate as not identifying an "agency

9    action" within the meaning of 5 U.S.C. § 702 or a "final agency action" within the meaning of

10   5 U.S.C. § 704); *Iqbal*, 556 U.S. at 678; *Ileto*, 349 F.3d at 1200.

11           Second, and more critically, even if Plaintiff's allegations could establish that Defendants

12   indeed made a final determination to not investigate and remedy the wrongful acts identified in

13   any of Plaintiff's complaints, Defendants' decision would not be subject to judicial review under

14   the APA.  "[T]he APA does not apply if the 'agency action is committed to agency discretion by

15   law' or if 'statutes preclude judicial review.'"  *City of Oakland v. Lynch*, 798 F.3d 1159, 1165 (9th

---

[4] As with his *Bivens* counts, Plaintiff conflates the acts of NMC, Commonwealth entities, and other non-parties with Defendants' actions or inactions.  (*See, e.g.*, Compl. 14 (asserting "Defendants' failure to investigate or remedy Plaintiff's complaints" is "evidenced by email showing unaddressed inquiries to CNMI officials).)  The relevant actions or inactions here are those of the federal agencies headed by the federal-officer Defendants—and not those of NMC, Commonwealth entities, and other local officials or individuals that are not affiliated with Defendants' federal agencies.

[5] Insofar as Plaintiff's claim could be construed as a challenge to agency inaction under 5 U.S.C. § 706(1), *see Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1207 (S.D. Cal. 2019); *Vaz v. Neal*, 33 F.4th 1131, 1137-38 (9th Cir. 2022), Plaintiff's generalized attack against alleged lackluster enforcement of federal law and demand for a substantive policy result as relief—namely, an order directing the federal agencies to "enforce" federal law and compel NMC and Commonwealth entities to accept him in federally funded programs and events—place his claim beyond the scope of 5 U.S.C. § 706(1).  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64-65 (2004) (explaining that claim under 5 U.S.C. § 706(1) is limited to claims where "an agency failed to take a *discrete* agency action that it is *required to take*," such that "broad programmatic attack[s]" and "judicial direction of even discrete agency action that is not demanded by law" are not cognizable).

Cir. 2015) (quoting 5 U.S.C. § 701(a)(1), (2)).  The Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion," such that there exists a "presumption . . . that judicial review is not available." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *see also id.* at 832 ("[W]e recognize that an agency's refusal to institute proceedings shares to some extent the characteristics of the decision of the prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.'"  (quoting U.S. Const. art. II, § 3)).

Therefore, Plaintiff's APA claim must be dismissed because Plaintiff's allegations fail to show that the actions challenged are "final" and otherwise subject to judicial review.  *See also Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) ("[T]he requirements for obtaining relief under the APA go to the merits, not to subject matter jurisdiction.").

### 3.  Plaintiff's Bill of Attainder Claim (Count IV)

Plaintiff's fourth count alleges that House Resolution 21-005 violates the prohibition against bills of attainder as set forth in Article I, Section 9, Clause 3 of the U.S. Constitution.[6]  "A

---

[6] Article I, Section 9, Clause 3's prohibition on bills of attainder applies only to Congress, while the parallel prohibition set forth at Article I, Section 10, Clause 1 applies to the States.  *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 n.30 (1977).  The Commonwealth Legislature is neither Congress nor a legislature of a State, thus begging the question of which clause's prohibition on bills of attainder applies to the Commonwealth, if at all.

Plaintiff asserts, without authority, that Article I, Section 9, Clause 3's prohibition extends to the Commonwealth Legislature as a "territorial legislature acting under federal authority."  (Compl. 18.)  The limited number of decisions concerning other territories on this issue suggest that Article I, Section 9, Clause 3's prohibition does not apply to *territorial* governments, even if such governments ultimately derive their authority from Congressional establishment of the government pursuant to Congress's plenary power to legislate for the territories, *see Wal-Mart Puerto Rico, Inc. v. Zaragoza-Gomez*, 174 F. Supp. 3d 585, 647 (D.P.R. 2016) ("The prohibition in Article I, Section 9, is only 'applicable to Congress' and thus is of no relevance here."  (quoting *Nixon*, 433 U.S. at 468 n.30)), and Congress would be limited by the prohibition in enacting legislation concerning the territory, *see Putty v. United States*, 220 F.2d 473, 478 (9th Cir. 1955)

1   bill of attainder is a 'law that legislatively determines guilt and inflicts punishment upon an

2   identifiable individual without provision of the protections of a judicial trial.'" *Fowler Packing*

3   *Co., Inc. v. Lanier*, 844 F.3d 809, 816-17 (9th Cir. 2016) (quoting *Nixon v. Adm'r of Gen. Servs.*,

4   433 U.S. 425, 468 (1977)); *see also United States v. Brown*, 381 U.S. 437, 441-49 (1965)

5   (discussing history of bills of attainder, federal constitutional prohibition on bills of attainder, and

6   cases). Plaintiff fails to state a claim because his allegations fail to establish that House Resolution

7   21-005 is a law.

8        For House Resolution 21-005 to be a bill of attainder, it must be a *law*—that is, an exercise

9   of the Commonwealth's power to "legislatively" determine Plaintiff's guilt and inflict punishment

10  without judicial trial. *Fowler Packing Co.*, 844 F.3d at 817 (quoting *Nixon*, 433 U.S. at 468); *see*

11  *also Brown*, 381 U.S. at 444-46 (explaining that prohibition is intended to "limit[] legislatures to

12

13  (holding Congressional amendment to Guam's Organic Act was an *ex post facto* law and an unconstitutional
    bill of attainder because the legislative act inflicted punishment without a judicial trial).

15       On the other hand, whether Article I, Section 10, Clause 1 applies to the territories is a more
    complex question that implicates the nature of the prohibition against bills of attainder, namely, whether
16  such a prohibition is so fundamental to government that it cannot be violated by any governmental entity,
    regardless of federal, state, or territorial status. *See Wal-Mart Puerto Rico, Inc.*, 174 F. Supp. 3d at 647-68
17  (noting conflicting authority on fundamental nature of prohibition but declining to resolve issue because
    parties did not contest applicability of Article I, Section 10, Clause 1 to Puerto Rico); *In re Pet. of*
    *Pangelinan*, 2008 MP 12 ¶¶ 58-74 (N. Mar. I. 2008) (discussing history and cases concerning identification
18  of fundamental rights within the context of the Insular Cases and the Commonwealth's political, legal, and
    cultural background).

19       The Court, however, need not wade into such murky waters because the history and legal
    arrangements unique to the Commonwealth point to Article I, Section 10, Clause 1 as the applicable
20  prohibition on enactment of bills of attainder by the Commonwealth Legislature. Section 501(a) of
    Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United
21  States of America provides that both Article I, Section 9, Clause 3 and Article I, Section 10, Clause 1 "will
    be applicable within the Northern Mariana Islands *as if the Northern Mariana Islands were one of the*
22  *several States*[.]" 48 U.S.C. § 1801 note (text of Covenant) (emphasis added). As such, the Commonwealth
    Legislature, treated as a legislature of a State, would be subject to Article I, Section 10, Clause 1's
23  prohibition against bills of attainder that are applicable to the various States. Furthermore, and in any event,
    the analysis governing bill of attainder claims is the same under both clauses. *See SeaRiver Mar. Fin.*
    *Holdings, Inc. v. Mineta*, 309 F.3d 662, 672 n.6 (9th Cir. 2002).

24

1    the task of rule-making"), *cf. INS v. Chadha*, 462 U.S. 919, 952 (1983) (characterizing action by

2    one house of Congress as "essentially legislative in purpose and effect" where such action "had

3    the purpose and effect of altering the legal rights, duties[,] and relations of persons," including

4    those "outside the legislative branch").    The Commonwealth Constitution vests the

5    Commonwealth's legislative power exclusively in the bicameral Northern Marianas

6    Commonwealth Legislature.  N. Mar. I. Const. art. II, § 1; *Torres v. Commonwealth Utils. Corp.*,

7    2009 MP 14 ¶ 25 (N. Mar. I. 2009).  The Commonwealth Legislature "may not enact a law except

8    by bill and no bill may be enacted without the approval of at least a majority of the votes cast in

9    each house of legislature," N. Mar. I. Const. art. II, § 5(c), and no bill shall become law without,

10    *inter alia*, transmittal of the enacted bill to the Commonwealth Governor for further action, *id.* art.

11    II, § 7(a).  *See also In re Status of Certain Tenth Leg. Bills*, 1998 MP 3 (N. Mar. I. 1998) (discussing

12    transmittal requirement).

13    Here, Plaintiff's allegations assert that House Resolution 21-005 has the force of law, as a

14    legislative enactment that specifically identifies Plaintiff, lists his undesirable conduct, and

15    declares him *persona non grata* and directs NMC and Commonwealth entities to discriminate

16    against him.  The Court takes judicial notice of the Commonwealth Law Revision Commission's

17    collection of public laws enacted by the Twenty-First Legislature and the Commonwealth

18    Legislature's records concerning the legislative history of House Resolution 21-005, as matters

19    "that [are] not subject to reasonable dispute because it . . . can be accurately and readily determined

20    from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also*

21    *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (granting request to take judicial notice

22    of legislative history of state statute).  House Resolution 21-005 is not among the forty-four public

23    laws enacted by the Twenty-First Legislature.  *See 21st Legislature*, COMMONWEALTH LAW

REVISION COMMISSION, https://cnmilaw.org/pl21.php.  Nor do the Commonwealth Legislature's records indicate that House Resolution 21-005 was ever adopted by the House of Representatives—instead, records show that House Resolution 21-005 was introduced and referred to committee without any further action.  *See House Resolutions: HR 21-005*, NORTHERN MARIANAS COMMONWEALTH LEGISLATURE, https://cnmileg.net/leg_sts.asp?legID=15743&secID=1 (listing last action as March 12, 2019 referral to House of Representatives Committee on Judiciary and Governmental Operations, with reporting deadline of May 11, 2019).  The final adjournment of the Twenty-First Legislature extinguished any further consideration of House Resolution 21-005.  *See In re Status of Certain Tenth Legis. Bills*, 1998 MP 3 ¶ 16 ("All bills which were *pending* in the Tenth Legislature 'died' after final adjournment.").  As such, House Resolution 21-005 was never enacted and is not law.  The Commonwealth accordingly has not "legislatively determine[d]" Plaintiff's guilt and inflicted a punishment through House Resolution 21-005.  *Fowler Packing Co.*, 844 F.3d at 817 (quoting *Nixon*, 433 U.S. at 468).  Dismissal of Count IV is therefore appropriate.[7]

### 4.  Plaintiff's Declaratory Judgment Claim (Count V)

Plaintiff's final count seeks a declaratory judgment in his favor.  Dismissal of Count V is appropriate because Plaintiff's allegations in support of Count V are premised on the same controversies and legal theories animating his other counts (*see* Compl. 24-28 (Defendants' systemic failure to enforce federal law, adverse NMC and Commonwealth actions, purported

---

[7] Plaintiff seeks to link the Commonwealth Legislature's actions on House Resolution 21-005 to Defendants such that Defendants would be liable for any damages caused by the Commonwealth's purported legislative acts.  As discussed *supra*, Plaintiff's allegations do not establish that Defendants (either personally or through the agencies they administer) were aware of Plaintiff or the Commonwealth's purported legislative acts or that they took action pursuant to the purported legislative acts.  Therefore, apart from the lack of an enacted legislative determination of Plaintiff's guilt and punishment, Count IV is also subject to dismissal for failure to adequately plead a cognizable link between House Resolution 21-005 and Defendants' conduct.

*persona non grata* status, challenge to agency inaction)), and the same technical and substantive defects that warrant dismissal of all of his other counts similarly require dismissal of his declaratory judgment count.

**B. Unnamed Doe Defendants**

Plaintiff identifies "John Does 1-3," sued in both their official and individual capacities, as additional defendants who were "involved in the discriminatory acts." (Compl. 6.) The Ninth Circuit has explained:

> As a general rule, the use of 'John Doe' to identify a defendant is not favored. However, situations arise . . . where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citations omitted). As such, Plaintiff must still satisfy all other pleading requirements as to the Doe Defendants such that "even if Doe's identity is discovered, the complaint would [not] have to be dismissed on other grounds." *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

Here, first, Plaintiff fails to set forth any specific allegations as to any of the Doe Defendants throughout the entirety of his Complaint. Plaintiff merely repeatedly inserts "John Does 1-3" next to conclusory assertions about the federal-officer Defendants' liability without any further factual allegations. (*See* Compl. 1, 5, 6, 13, 18.) Such pleading fails to state a claim against any of the Doe Defendants. *Iqbal*, 556 U.S. at 678; *Ileto*, 349 F.3d at 1200; *Ivey*, 673 F.2d at 268. Dismissal of all claims against all Doe Defendants is therefore appropriate.

Second, the rationale for dismissing all of Plaintiff's counts as to the federal-officer Defendants applies with equal force to the Doe Defendants. Counts I and II must be dismissed because (1) Plaintiff fails to plead any allegations showing that any Doe Defendant personally

engaged in wrongful conduct against him; (2) Plaintiff's Fifth Amendment Due Process Clause *Bivens* claim is foreclosed by the availability of relief under the APA; (3) Plaintiff fails to plead sufficient allegations to establish his Fifth Amendment equal protection *Bivens* claim; and (4) Plaintiff's First Amendment retaliation *Bivens* claim is squarely foreclosed by precedent. *See supra* Part II-A-1.  Count III must be dismissed because Plaintiff fails to allege a final agency action that is subject to judicial review. *See supra* Part II-A-2.  Count IV must be dismissed because House Resolution 21-005 was never enacted. *See supra* Part II-A-3.  And Count V must be dismissed because Plaintiff's declaratory judgment claim relies upon the same defective allegations and legal theories asserted across his four other counts. *See supra* Part II-A-4.

**C.  Leave to Amend**

Having determined that dismissal of all of Plaintiff's claims as to all Defendants is appropriate, the Court will nonetheless give Plaintiff leave to amend his Complaint. *Lopez*, 203 F.3d at 1130.  Should Plaintiff desire to file a first amended complaint, Plaintiff must cure all deficiencies as identified in this order, including setting forth sufficient, specific facts as to each and every Defendant he contends is liable to him on each and every count.  In addition, Plaintiff must file all exhibits cited in any first amended complaint at the time of filing of a first amended complaint.

### IV.    CONCLUSION

For the foregoing reasons, as required by 28 U.S.C. § 1915(e)(2)(B), Plaintiff's Complaint (ECF No. 2) is DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND, to wit:

(1) Counts I and II are dismissed for lack of subject-matter jurisdiction as to the named federal-officer Defendants and dismissed for failure to state a claim as to the Doe Defendants;

(2) Count III is dismissed for failure to state a claim as to all Defendants;

(3) Count IV is dismissed for failure to state a claim as to all Defendants; and

(4) Count V is dismissed for failure to state a claim as to all Defendants.

Plaintiff must file any first amended complaint that complies with the requirements set forth in this order by no later than **March 30, 2026**.  **Failure to do so may result in dismissal of this case with prejudice.**

IT IS SO ORDERED this 18th day of February, 2026.

_____
RAMONA V. MANGLONA
Chief Judge